# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Kelley L. Hendrickson,<br><br>                              Plaintiff,<br><br>v.<br><br>Fifth Third Bank, and 11th Hour Recovery, Inc.,<br><br>                              Defendants. | Case No.: 0:18-cv-00086-WMW-TNL |

# FIFTH THIRD BANK'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

## I.      INTRODUCTION.

The allegations in a complaint provide guidelines for the scope of relevant discovery. The Complaint of Plaintiff Kelly Hendrickson ("Plaintiff") alleges, simply, that Fifth Third repossessed her car without first sending her a "*Cobb* notice," and that by doing so it violated Minnesota Statutes section 336.9-609 and converted the car. Plaintiff's theory is one of strict liability, and her allegations do not implicate Fifth Third's internal policies or procedures or the bank's servicing of other customers' accounts; these materials do not provide the relevant standard of care for this action, and are not otherwise relevant. Further, Plaintiff's Complaint contains no class allegations, nor does it seek to certify a putative class of individuals who have claims against Defendant Fifth Third Bank ("Fifth Third").

Despite this, Plaintiff served Fifth Third with voluminous discovery on June 13, 2018—well ***after*** the Court's deadlines to amend the Complaint in this action had passed—which expressly seeks to discover information well beyond that information that is necessary, relevant, or proportional to this action. For example, Plaintiff seeks to discover Fifth Third's policies and procedures for sending written notices that Plaintiff contends are required by *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980)— which Plaintiff incorrectly argues must be sent to borrowers in some instances

before a creditor repossess a vehicle.[1] Fifth Third's internal policies and procedures are irrelevant to whether such written notices are required under Minnesota law, or whether such a notice was sent to Plaintiff before the vehicle was repossessed in this case. Nor do such internal policies and procedures establish a standard of care that is applicable given the claims at issue in this case. The same analysis is true of Plaintiff's discovery requests seeking documents and information concerning other customers whose vehicles were repossessed in Minnesota.

Plaintiff's true purpose for seeking this discovery is to seek a basis to assert a class action against Fifth Third. Because a class action that subsumes Plaintiff's claims has already been filed in another case in this federal district,[2] and the value of Plaintiff's claim compared with the expense and burden of providing responses to the irrelevant discovery propounded by Plaintiff in this action is not proportional to the needs of this case, Fifth Third respectfully requests the Court enter a protective order limiting Plaintiff's ability to obtain discovery in response to the specific discovery requests identified herein, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

---

[1] The applicability of these so-called *Cobb* notices, in light of Minnesota's Credit Agreement Statute (Minn. Stat. § 513.33) and the Minnesota Supreme Court's decision in *Figgins v. Wilcox*, 879 N.W.2d 653 (Minn. 2016) is the subject of a pending dispositive motion before Judge Wright. (ECF No. 26.)

[2] *See Elizabeth A. Sampson and Tracey A. Lane v. Fifth Third Bank*, No. 18-CV-01622 (PJS/DTS) (D. Minn.) (ECF No. 1-1, Compl.)

## II.   FACTS.

### A.   Plaintiff Asserts Individual Claims with a Limited Value of Potential Recovery.

Plaintiff's Complaint asserts two counts against Fifth Third, and one against Defendant 11th Hour Recovery ("11th Hour"), each on behalf of only herself. (ECF No. 1-1.) Plaintiff's Complaint does not define any putative class that Plaintiff or Plaintiff's counsel seeks to represent. (*See generally*, *id*.) Nor does it contain any allegations that such a class meets the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure to certify a class. (*Id*.)

Exhibit A to Plaintiff's Complaint demonstrates the initial loan funding for the vehicle securing the credit agreement at issue in this action was in the amount of $14,419.37. (*Id*. at Exhibit A.) Prior to the repossession of the vehicle, Plaintiff had made 10 payments on the vehicle, thus reducing the outstanding amount owed. (*Id*.)

### B.   Plaintiff Propounds Expansive Discovery Relevant (if at all) Only to Class Claims and Disproportional to the Needs of this Action.

The deadline to amend pleadings in this case expired on May 1, 2018. (ECF No. 9, Scheduling Order at ¶ 4(b).) The deadline to amend to add a claim for punitive damages expired June 1, 2018. (*Id*., ¶ 4(c).) Plaintiff did not amend her Complaint prior to these deadlines. Nor did Plaintiff serve discovery until after those deadlines expired. On June 13, 2018, Plaintiff provided copies of

omnibus discovery requests via email, containing Interrogatories, Requests for Admissions, Requests for Production, and Requests for Statements directed to Fifth Third. (Declaration of David J. Carrier ("Carrier Decl.") ¶ 2, Ex. A.)

On July 10, 2018, counsel for Fifth Third sent an email to counsel for Plaintiff attaching Fifth Third's Notice of Removal in *Sampson, et al. v. Fifth Third*, a putative class action case filed in this federal district. (*Id.*, ¶ 3, Ex. B.) In that correspondence, counsel for Fifth Third advised "a considerable portion of the discovery served by Plaintiff in the *Hendrickson v. Fifth Third* action appears to be directed at obtaining information that would be relevant (if at all) in a class action, and is not relevant for purposes of the *Hendrickson* action because that case is not a class action and the time for adding class allegations has now passed," and asked if Plaintiff would agree to a stay of discovery. (*Id.*) In the event Plaintiff would not so agree, Fifth Third requested Plaintiff's counsel provide their availability to meet and confer regarding the numerous grounds upon which Plaintiff's discovery requests were objectionable. (*Id.*)

Receiving no response from any of Plaintiff's four attorneys, counsel for Fifth Third subsequently sent a follow-up email on July 12, again requesting a time to meet and confer regarding Fifth Third's concerns with Plaintiff's propounded discovery, which was causing Fifth Third challenges in responding to the same. (*Id.*, ¶ 4, Ex. C.) Accordingly, counsel for Fifth Third also requested a slight extension so that Fifth Third could serve its responses to Plaintiff's

discovery on July 18. Plaintiff's counsel responded that same day, for the first time asserting that Plaintiff would seek to amend her complaint to add class action allegations, despite class allegations in a nearly identical case (*i.e.*, *Sampson v. Fifth Third*) already being filed in this District. (*Id.*, ¶ 5, Ex. D.) Plaintiff's counsel further stated he was available to meet and confer on July 19, and that Plaintiff would only agree to an extension of time to respond to discovery until July 19 on the condition that Fifth Third would not move to stay discovery before it served its responses and documents on July 18. (*Id.*)

Counsel for Fifth Third spoke with Plaintiff's counsel via telephone on July 16, and advised that it would serve written responses to Plaintiff's discovery on July 17, and would produce responsive, non-objectionable documents in the ordinary course of discovery, and in any event, prior to filing a motion to stay discovery. (*Id.*, ¶ 6.)

On July 17, Plaintiff's counsel advised Fifth Third that his **client** had instructed him to wait to meet and confer regarding Fifth Third's objections to Plaintiff's discovery, any motion to stay discovery, and Fifth Third's motion for judgment on the pleadings until Fifth Third serves its discovery responses and the corresponding documents. (*Id.*, ¶ 7, Ex. E.) Plaintiff's alleged refusal to allow her counsel to meet and confer regarding Fifth Third's objections to portions of her propounded discovery inhibited Fifth Third's ability to respond

to Plaintiff's discovery requests. Moreover, it means that the parties were not afforded the timely opportunity to attempt to avoid this motion.

## C. Fifth Third's Objections to Plaintiff's Discovery Requests

Despite Plaintiff's refusal to meet and confer, Fifth Third served written discovery responses on July 17, 2018, as it advised Plaintiff's counsel it would. (*Id.*, ¶ 9, Ex. F.) The interrogatories, requests for admission, and requests for production Fifth Third contends are objectionable and require no response, and which are subject to this motion for protection, along with Fifth Third's specific objections to those discovery requests, can be found at Exhibit G to the Carrier Declaration, per Local Rule 37.1(c). The specific requests are objectionable as summarized immediately below and in Fifth Third's responses to Plaintiff's discovery which are incorporated herein by reference. Fifth Third is entitled to an order for protection for the reasons set forth in its objections to Plaintiff's discovery as further discussed in Section IV herein.

### 1. Fifth Third's Objections to Interrogatories.

Plaintiff's **Interrogatory Nos. 10 and 11** seek nearly identical information: Fifth Third's policies and procedures for sending a written notice or written strict compliance notice to Minnesota customers who have made partial or late payments warning them that future partial or late payments will not be tolerated or may result in repossession of the collateral. (Carrier Decl., Ex. G, at Interrogatory Nos. 10-11.) As set forth in Fifth Third's

objections, which are incorporated herein by reference, and as further argued below, Fifth Third objects to, among other things, bearing the cost of responding to Interrogatory Nos. 10 and 11 because they do not seek relevant information, improperly seek discovery relevant (if at all) only to a class of borrowers and not to Plaintiff's individual claims, and seek irrelevant and inconclusive information regarding a standard of care that has no bearing on the disputed claims or defenses asserted in this case. Interrogatory Nos. 10 and 11 therefore seek information that is neither relevant nor discoverable, and the need to discover such information is necessarily not proportional to the needs of this case.

Plaintiff's **<u>Interrogatory No. 13</u>** asks if any guidelines or procedures identified in the preceding answers have been modified in any way since the occurrence of the facts and circumstances as alleged in the Complaint, and, if so, seeks to require Fifth Third to provide information concerning such modifications. (*See id*. at Interrogatory No. 13.) Because the guidelines or procedures about which Plaintiff seeks information are not discoverable as described in the preceding paragraph, this information is similarly neither discoverable nor proportional to the needs of the case.

Plaintiff's **<u>Interrogatory No. 14</u>** seeks information regarding Fifth Third's policies and procedures for any phone conversation with borrowers who are delinquent on vehicle loans. (*See id*. at Interrogatory No. 14.) Fifth Third

objects because such information bears no relevance to the issues presented in this case: (1) the legal issue of whether Fifth Third was required to provide Plaintiff with notice it would require strict compliance with the terms of Plaintiff's credit agreement (*i.e.*, a *Cobb notice*), and, if so then, (2) the factual issue of whether Fifth Third actually provided a sufficient *Cobb* notice to Plaintiff as it relates to its repossession of the car at issue in this case. The only information concerning telephone calls relevant to this case concern the actual calls between Fifth Third and Plaintiff which were recorded—and which will be produced in discovery. Allowing Plaintiff to discover general information concerning Fifth Third's internal policies and procedures does not establish compliance with those policies and procedures in the case at bar, and is both irrelevant and inconclusive in terms of establishing a standard of care that is applicable to the claims and defenses at issue in this action. This information is therefore neither discoverable nor proportional to the needs of the case.

Plaintiff's **Interrogatory No. 15** requests information concerning Fifth Third's policies and procedures "for entering into credit accommodation agreements, forbearance agreements, or other arrangements to delay repossession in exchange for promises of future loan payments." (*See id*. at Interrogatory No. 15.) Plaintiff has not alleged she entered into any of the foregoing, and therefore such information is not relevant to her claims or to any defenses asserted by Fifth Third of 11th Hour. Moreover, Interrogatory

No. 15 improperly seeks discovery relevant (if at all) only to a class of borrowers and not to Plaintiff's individual claims. Further, Interrogatory No. 15 seeks irrelevant and inconclusive information regarding a standard of care that has no bearing on the disputed claims or defenses asserted in this case. Further, Minnesota law (*e.g.*, Minn. Stat. § 513.33 and *Figgins v. Wilcox*, 879 N.W.2d 653 (Minn. 2016)) controls the enforceability of credit accommodation agreements, forbearance agreements, or other arrangements to delay repossession in exchange for promises of future loan payments, not Fifth Third's internal policies and procedures. Interrogatory No. 15 therefore seeks information that is neither relevant nor discoverable, and the need to discover such information is necessarily not proportional to the needs of this case.

Plaintiff's **Interrogatory Nos. 18 and 19** seek nearly identical information: the number of borrowers who had their vehicles repossessed in Minnesota over a period of time. (*See id.* at Interrogatory Nos. 18-19.) This information is not relevant or discoverable because it has no bearing whatsoever over Plaintiff's claims or Defendants' defenses, and is a transparent attempt to gather discovery as to the potential size of a class of borrowers who may be similarly situated to Plaintiff. These Interrogatories also improperly seek data concerning Fifth Third's relationships with *other* customers, as Request for Production No. 1 requires the bank to produce all documents relied upon to respond to the Interrogatories. Moreover,

Interrogatory Nos. 18-19 do not seek information appropriately limited to individuals who ever made partial or late payments, nor are they limited to Fifth Third borrowers during an appropriate or reasonable time frame. Fifth Third is entitled to protection from overly broad and unduly burdensome discovery having no relevance to Plaintiff's claims, and which would compel disclosure by the bank of confidential information about other customers; the information sought is not tailored to the needs of this case, and is therefore not proportional to its needs.

Plaintiff's **<u>Interrogatory No. 20</u>** seeks information concerning whether Fifth Third sent borrowers described in Interrogatory No. 19 a *Cobb* notice prior to repossession.  (*See id.* at Interrogatory No. 20.) As set forth in Fifth Third's objections to Interrogatory Nos. 18 and 19, and as further argued below, Fifth Third objects to, among other things, bearing the cost of responding to this overly broad Interrogatory because it does not seek information relevant to the claims and defenses asserted in this action, and improperly seeks discovery only relevant (if at all) to a class of borrowers rather than to Plaintiff's individual claims. Interrogatory No. 20 therefore seeks information that is not relevant or discoverable. The need to discover such information in this action is non-existent and, therefore, not proportional to the needs of the case. Indeed, this Interrogatory expressly seeks information relevant ***only*** to potential claims of other individuals who are not parties to

this case. Fifth Third is entitled to protection from such discovery, among other reasons, because Interrogatory No. 20 is overly broad, unduly burdensome, seeks irrelevant information, and is not proportional to the needs of this case.

Plaintiff's **Interrogatory No. 21** seeks information concerning "all complaints, lawsuits, regulatory investigations or communications [to Fifth Third] concerning alleged "wrongful repossession" [sic] from January 1, 2014 to present." (*See id*. at Interrogatory No. 21.) This Interrogatory seeks information that is not relevant to any of Plaintiff's claims, or even the claims of other borrowers concerning the same issues raised in Plaintiff's Complaint. Nor does Interrogatory No. 21 appropriately or reasonably limit its scope to Minnesota borrowers or the timeframe when Plaintiff obtained financing for the vehicle at issue. This Interrogatory blatantly seeks to gather information that could solely be used to bring other actions against Fifth Third concerning issues unrelated to Plaintiff's claim. Moreover, Interrogatory No. 21 ignores the impact of any statutory, regulatory, or common law privacy and confidentiality rights the affected customers may have, along with any regulatory privileges to which Fifth Third is entitled. The information sought in this Interrogatory has no connection to Plaintiff's claim other than her communications to Fifth Third—which she either already possesses, or which Fifth Third has agreed to produce. There is no need to discover the overly broad and unduly burdensome scope of information sought by Interrogatory No. 21,

and Fifth Third is entitled to protection from its discovery—except as it relates to information concerning Plaintiff's loan.[3]

Plaintiff's **<u>Interrogatory No. 22</u>** requests all Fifth Third "memos, emails, policies or other writings or communications that refer to Minnesota law, Minnesota regulations, strict compliance notices, or Cobb Notices." (*See id*. at Interrogatory No. 22.) As set forth in Fifth Third's objection to Interrogatory No. 22, which is incorporated herein by reference, and as further argued below, Fifth Third objects to, among other things, bearing the cost of responding to this Interrogatory because it does not seek information relevant to the claims and defenses in this action, improperly seeks discovery relevant (if at all) only to a class of borrowers and not to Plaintiff's individual claims, and seeks irrelevant and inconclusive information regarding a standard of care that has no bearing on the disputed claims or defenses asserted in this case. Additionally, Interrogatory No. 22 is overly broad and unduly burdensome because there is no limitation on the scope of subject matter with respect to the "BANK memos, emails, policies or other writings or communications that refer to Minnesota law [or] Minnesota regulations" that are the subject matter of

---

[3] To the extent this Interrogatory seeks confidential communications with borrowers, or about other borrowers, who breached their loan agreements and failed to pay money legally owed to Fifth Third, this Interrogatory is also objectionable as it seeks the confidential information of those borrowers as well as Fifth Third's confidential information.

this interrogatory. Accordingly, Interrogatory No. 20 seeks information that is not relevant or discoverable, and the need to discover such information is necessarily not proportional to the needs of the case. Interrogatory No. 22 is also a blatant and inappropriate attempt to obtain information concerning matters that are appropriately shielded by the attorney-client privilege and/or work product doctrine. Further, Interrogatory No. 22 inappropriately seeks disclosure of confidential financial information and communications concerning other borrowers—which unnecessarily invades the privacy rights of those borrowers.

## 2.   Fifth Third's Objections to Requests for Admission

Plaintiff's **Request for Admission No. 11** asks Fifth Third to admit that Fifth Third has repossessed over forty vehicles from Minnesota consumers "within the past year." (*See id*. at Request for Admission No. 11.) This information is not relevant or discoverable because it has no bearing whatsoever over Plaintiff's claim, and is a blatant attempt to gather discovery as to the potential size of a class of borrowers who may be similarly situated to Plaintiff. Moreover, Request No. 11 is overly broad, and thus seeks an admission concerning irrelevant matters, because it is not limited to individuals who made partial or late payments. Fifth Third is entitled to protection from discovery having no relevance to Plaintiff's claims as such

information is not necessary to this case, and is therefore not proportional to its needs.

Plaintiff's **Request for Admission Nos. 12 and 13** seek nearly identical admissions: that Fifth Third did not have a policy or procedure for sending *Cobb* notices or notifying borrowers in writing that strict compliance with the terms of their credit agreements was required. (*See id.* at Request for Admission Nos. 12.-13) As set forth in Fifth Third's objections, which are incorporated herein by reference, and as further argued below, Fifth Third objects to, among other things, bearing the burden of responding to these Requests because they do not seek admissions regarding relevant information, improperly seek discovery relevant (if at all) only to a class of borrowers and not to Plaintiff's individual claims, and seek irrelevant and inconclusive information regarding a standard of care that has no bearing on the disputed claims or defenses asserted in this case.

### 3.    Fifth Third's Objections to Requests for Production

Plaintiff's **Request for Production No. 9** seeks the production of "all procedural and policy manuals in existence and in Fifth Third's possession or control and which relate to seven broad categories set forth in the Request. (*See id.* at Request for Production No. 9.) As set forth in Fifth Third's objection, which is incorporated herein by reference, and as further argued below, Fifth Third objects to, among other things, bearing the burden of responding to

Request No. 9 because, in every instance set forth in the Request the topic does not seek relevant information, improperly seeks discovery relevant (if at all) only to a class of borrowers and not to Plaintiff's individual claims, and seeks irrelevant and inconclusive information regarding standards of care that have no bearing on the disputed claims or defenses asserted in this case. Request No. 9, therefore, seeks information that is neither relevant nor discoverable, and the need to discover such information is necessarily not proportional to the needs of this case.

Plaintiff's **Request for Production No. 12** seeks "[a]ny and all policies referencing Minnesota law, Cobb Notices, and/or notices concerning strict compliance with contract or loan terms." Fifth Third objects because the requested documents bear no relevance to the issues presented in this case: (1) the legal issue of whether Fifth Third was required to provide Plaintiff with notice it would require strict compliance with the terms of the credit agreement (*i.e.*, a *Cobb* notice), and, if so, then (2) the factual issue of whether Fifth Third actually did provide a sufficient *Cobb* notice to Plaintiff as it relates to its repossession of the car at issue in this case. Allowing Plaintiff to discover this general information concerning Fifth Third's internal policies and procedures does not establish compliance with those policies and procedures in the case at bar, and is both irrelevant and inconclusive in terms of establishing a standard of care that is applicable to the disputed claims and defenses at issue in this

action. Further, Request No. 12 inappropriately seeks disclosure of confidential financial information and communications concerning other borrowers and, thus, seeks to invade their privacy interests. The documents sought by this Request No 12 are, therefore neither, discoverable nor proportional to the needs of the case.

## III.   STANDARD OF REVIEW.

Federal Rule of Civil Procedure 26(c) grants the court broad discretion to decide when a protective order is appropriate, and what degree of protection is necessary. *May Coating Tech., Inc. v. Illinois Tool Works*, 157 F.R.D. 55, 57 (D. Minn. 1994) (citations omitted). "The requirement that good cause be shown, however, still must be met by the party seeking the protective order." *Id*.

Good cause exists when justice requires the protection of "a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and the court can "forbid[] inquiry into certain matters, or limit[] the scope of disclosure of discovery to certain matters." Fed. R. Civ. P. 26(c). "The party seeking the order . . . bears the burden of establishing the requisite 'good cause.'" *Northbrook Digital, LLC v. Vendio Servs.*, 625 F. Supp. 2d 728, 734 (D. Minn. 2008).

When determining whether to issue a protective order, courts use a balancing test to determine whether good cause exists, weighing the moving

16

party's potential burden against the opposing party's interest in the discovery at issue. *Brosdahl-Nielsen v. Walden Automotive Group, Inc.*, No. 04-cv-1363 (JMR/JSM), 2004 WL 6040018, at *2 (D. Minn. Nov. 24, 2004); *Honeywell Int'l Inc. v. ICM Controls Corp.*, No. 11-CV-569 JNE/TNL, 2013 WL 6169671 at *13 (D. Minn. Nov. 22, 2013) (issuing a protective order when discovering party sought irrelevant documents and information); *see also Carlson Cos., Inc. v. Sperry & Hutchinson Co.*, 374 F. Supp. 1080, 1089 (D. Minn. 1973) (noting "practical considerations dictate that the parties should not be permitted to roam in the shadow zones of relevancy to explore matter which does not presently appear germane o[n] the theory that it might conceivably become so" (quotation omitted)).

It is important to note:

> The 2015 amendments to Rule 26 "restore[d] the proportionality factors to their original place in defining the scope of discovery." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. Furthermore, the oft-cited phrase "reasonably calculated to lead to the discovery of admissible evidence" that had been in the previous version was deleted by the 2015 amendments because the phrase had been used, incorrectly, to expand the scope of discovery.

*Deluxe Fin. Servs., LLC v. Shaw*, No. 16-CV-3065 (JRT/HB), 2017 WL 7369890, at *4 (D. Minn. Feb. 13, 2017).

This Court has recognized that, even before the 2015-amendments, when courts applied "reasonably calculated to lead to the discovery of admissible evidence" standard, "[s]ome threshold showing [was] necessary, however,

'before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'" *Honeywell Int'l Inc.*, 2013 WL 6169671, at *12 (quoting *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)); *see also Bredemus v. Int'l Paper Co.*, 252 F.R.D. 55, 57 (D. Minn. 1994) (stating "relevancy under Rule 26 is not without bounds").

Moreover, the advisory committee notes to the 2015 amendments state "***the party seeking discovery [has] the burden of addressing all proportionality considerations***," and that ***"[a] party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.***" Fed. R. Civ. P. 26, at 2015 Advisory Comm. Note, emphasis added. When analyzing proportionality under Rule 26, courts "tak[e] into 'consider[ation] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *City of Wyoming, Minnesota v. Procter & Gamble Co.*, No. 15-CV-2101 (JRT/TNL), 2016 WL 6908110, at *2 (D. Minn. Oct. 7, 2016) (quoting Fed. R. Civ. P. 26(b)(1)).

## IV.   ARGUMENT.

Plaintiff seeks interrogatory responses, admissions, and documents concerning, among other things:

- Fifth Third's "policy and procedure for sending a written strict compliance notice to Minnesota customers" and any modifications to the same;

- Fifth Third's "policies and procedures, if any, for phone conversation [(sic)] with borrowers who are delinquent on vehicle loans";

- Fifth Third's "policies and procedures, if any, for entering into credit accommodation agreements, forbearance agreements, or other arrangements to delay repossession in exchange for promises of future loan payments";

- The number of borrowers whose vehicles were repossessed in Minnesota;

- Whether Fifth Third sent such borrowers what Plaintiff defines as a "Cobb Notice";

- All other complaints, lawsuits, regulatory investigations, or communications regarding any alleged wrongful repossession; and

- Procedural and policy manuals regarding the above issues, as well as assigning accounts to outside collection contractors for

collection/repossessions, notices of sale for repossessed vehicles, and "[a]ny other procedures which relate to the subject matter or issues in this lawsuit."

*See generally*, Section II.B above.

In each instance, such discovery is objectionable and provides a basis for this Court to issue a protective order. In many instances, Plaintiff is seeking to gather information irrelevant to her claims, but which would assist in ascertaining whether a class action may be sustained against Fifth Third. As she has not pleaded class allegations, and the time for amending pleadings has passed, such discovery is grossly disproportional to the needs of this case. Moreover, the pursuit of policies and procedures can only be relevant to establishing a standard of care that Fifth Third must then meet. This is forbidden under Minnesota law, as the only relevant question is whether Fifth Third's conduct toward Plaintiff—not its internal policies—violate the law.

## A.   Plaintiff is not Entitled to Burdensome, Disproportional, and Irrelevant Class-Related Discovery.

### 1.   Discovery concerning class claims is irrelevant because no class action claims have been pleaded.

Plaintiff propounded several discovery requests which serve no purpose other than ascertain information concerning potential claims a proposed class—meaning only individuals *other* than Plaintiff—may be able to assert against Fifth Third. (*See* Interrogatory Nos. 18, 19, 20, 21; Request for

Admission No. 1.) Notably, though, Plaintiff has not pleaded any claims on behalf of a putative class, or any class allegations, in her Complaint. Therefore, Plaintiff cannot meet the "threshold showing . . . before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Honeywell Int'l Inc.*, 2013 WL 6169671, at *12 (D. Minn. Nov. 22, 2013) (quoting *Hofer*, 981 F.2d at 380).

In *Honeywell*, the defendant moved for a protective order preventing discovery—in that case Rule 30(b)(6) deposition topics—concerning its insurance coverage. 2013 WL 6169671 at *11. This Court found that, in essence, plaintiff sought the production of insurance claims file information. *Id.* at *12. But because the case was not an insurance-coverage dispute, the discovery sought therefore had little ("if any") bearing on the actual claims asserted in the litigation. *Id.*

A Minnesota state court agreed with this Court's reasoning when presented with an opportunity to analyze an analogous situation in *Perez v. Am. Family Ins. Co*, 2016 WL 5408064 (Minn. Dist. Ct. Aug 24, 2016). In *Perez*, Plaintiff had pleaded a claim for recovery under his uninsured motorist policy. *Id.* at *1. Plaintiff had not pleaded a bad faith claim against defendant.[4] *Id.* at

---

[4] A bad faith claim, like a claim for punitive damages, cannot be made in an initial pleading. Minn. Stat. § 604.18, subd. 2(a) (2016); *Perez*, 2016 WL 5408064 at *4.

*4. The Court in *Perez* determined defendant's training manuals, policies, and procedures for evaluating coverage claims were not discoverable because they were only relevant to a not-pleaded bad faith claim. *Id*. at *4-5. The Court stated, "[u]ntil a bad faith claim is added, Plaintiff is not entitled to information regarding that claim. The Court's gate-keeping function extends not just to the inclusion of the claim but to the parties' investigation into a claim not yet pleaded." *Id*. at *5.

The reasoning of *Honeywell* and *Perez* are even more applicable in the instant matter, and it is vitally important the Court exercise its gate-keeping function. Here, it is plain that through the discovery requests identified in this motion, Plaintiff is ***not*** seeking discoverable information in support of her pleaded claims against Fifth Third, but rather is attempting to ascertain the potential scope of a class action which she hopes to assert against Fifth Third, but which has not yet been pleaded, and despite the time for amending the Complaint to add such claims expiring under the Scheduling Order months ago.[5] Plaintiff's lack of diligence should not now be excused by allowing her to

---

[5] To the extent Plaintiff asserts she is seeking information relevant to asserting a claim for punitive damages, this argument also fails. First, Plaintiff failed to seek leave to amend her Complaint within the Scheduling Order's deadline to do so. Second, Plaintiff failed to seek discovery to locate facts supporting such a claim at any time prior to the deadline for adding a claim for punitive damages expiring.

seek irrelevant and burdensome discovery regarding claims that are not asserted in her Complaint.

The number of vehicles repossessed pursuant to credit agreements with Fifth Third—and also Fifth Third's policies and procedures for providing notices generally, and Fifth Third's policies for interacting with its customers—generally have no bearing on whether Plaintiff was entitled to some type of notice that Fifth Third would be requiring strict compliance with the terms of her credit agreement before repossessing the vehicle, and if so, whether Fifth Third provided sufficient notice regarding the same.

In this regard, Plaintiff's discovery requests suffer from a fatal defect— she has not pleaded any class claims. Accordingly, Plaintiff's discovery requests relating to class discovery are not relevant to any claim actually pleaded in this action—and thus seek irrelevant documents and information. *See* Fed. R. Civ. P. 26(b)(1) (limiting the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense").

Plaintiff only recently disclosed she intends seek to amend her Complaint to add class allegations and claims on behalf of a putative class *if* the Court grants her motion to amend the Scheduling Order. As of this date, however, Plaintiff has failed to amend her Complaint to add allegations and claims on behalf of a putative class.

Having learned that plaintiff in the *Sampson v. Fifth Third* putative class action has alleged claims on behalf of a class which undoubtedly includes Plaintiff's claims in this matter, Plaintiff in this matter will seek to use the discovery subject to this motion to pursue a copycat class action, if the discovery is allowed. Significantly, though, plaintiffs in the *Sampson v. Fifth Third* putative class action did not require any discovery in order to assert the class action allegations in a substantially similar litigation matter (Carrier Decl., ¶ 5, Ex. D)—thus demonstrating Plaintiff's attempted discovery in this case is both unnecessary and imposes an undue burden on Fifth Third, in addition to being irrelevant. Fifth Third is therefore entitled to a protective order.[6]

### 2. Discovery concerning class claims is not proportional to the needs of this case.

Not only are the documents and information sought by Plaintiff's discovery subject to this motion not relevant, but Plaintiff's discovery requests are also disproportional to the needs of this case. *See City of Wyoming, Minnesota v. Procter & Gamble Co.*, No. 15-CV-2101 (JRT/TNL), 2016 WL 6908110, at *2 (D. Minn. Oct. 7, 2016) (stating that courts analyze

---

[6] Plaintiff's attempt to usurp the class action process already being pursued by the plaintiff in *Sampson v. Fifth Third* introduces a significant element of inconvenience, cost, and prejudice to Fifth Third which will be responding to similar discovery in both actions. Moreover, allowing discovery in both actions regarding class-related issues also subjects the parties to inconsistent results.

proportionality by weighing "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") Weighing the factors set forth in Rule 26(b)(1) for determining proportionality demonstrates Plaintiff's requests fail to satisfy the Rule's proportionality requirement.

First, the requested discovery has no importance in the issues currently at stake in this action, or in resolving those issues. As set forth above, the class-related discovery sought by Plaintiff affects only borrowers other than Plaintiff, and Plaintiff has only pleaded individual claims. Accordingly, the requested information has no value in aiding the resolution of Plaintiff's claims. Second, Plaintiff's original loan to purchase a single vehicle was for $14,419.37, and yet she seeks discovery concerning every vehicle repossessed in the state of Minnesota since January 11, 2014. The scope of Plaintiff's request bears no proportionality to the facts of her case. To answer Interrogatories Nos. 18, 19, and 20, and Request for Production No. 1 as it relates to those Interrogatories, would require Fifth Third to undertake a loan-level review of Minnesota consumers over an indeterminate, several-year period to identify all such consumers who were subject to repossession and to assess whether, under Plaintiff's theory, a "Cobb notice" was required and

25

whether one was sent. This undertaking would require considerable time and expense on the part of the Bank to identify and review loan and loan servicing records for each customer—all in a single-plaintiff matter involving a single transaction.  Plaintiff's requests not only present a substantial financial and time burden to furnish responses that have no bearing on her individual claims, but also would require significant analysis, and possibly disclosure, of private financial information concerning Fifth Third's borrowers. The burden for Fifth Third to respond to Plaintiff's irrelevant requests, and for ensuring its borrowers confidential financial information remains protected, substantially outweighs any benefit of producing the requested information in a case involving a $14,419.37 loan.

The 2015 amendments to Rule 26 expressly incorporated the concept of proportionality to prevent irrelevant, minimally relevant, and burdensome discovery from unnecessarily driving up litigation costs when the discovery sought is not proportional to the dispute before the court. Subjecting Fifth Third to the burdens of responding to Plaintiff's class discovery, when Plaintiff failed to plead any class action allegations or claims in her Complaint, and is now barred from amending her Complaint by the applicable Scheduling Order, violates the principles of proportionality required under Rule 26(b)(1).

B.   **Fifth Third is Entitled to Protection from Irrelevant and Disproportional Discovery Seeking its Internal Policies and Procedures.**

1.   **The Internal Policies Sought by Plaintiff Are Not Relevant to any Standard of Conduct at Issue in this Case.**

Plaintiff ostensibly seeks to discover Fifth Third's confidential and trade secret policies and procedures in order to establish a standard of care—which she will then seek to demonstrate Fifth Third violated. Such discovery should not be allowed as it is not relevant to any disputed claims or defenses asserted in this action.

Minnesota courts first held more than a century ago that "[p]rivate rules of a master regulating the conduct of his servants in the management of his own business, although designed for the protection of others, stand on an entirely different footing from statutes and municipal ordinances designed for the protection of the public." *Fonda v. St. Paul City Ry. Co.*, 74 N.W. 166, 169 (1898). This rule has been widely adopted both within and outside this circuit during the intervening 120-years. *See, e.g.*, *Bevier v. Prod. Credit Ass'n of Southeast Minn.*, 429 N.W.2d 287, 289 (Minn. Ct. App. 1988) ("internal policies do not create a standard of care that can be relied on" and "[t]here is simply nothing that indicates [defendant]'s internal lending policies create specific enforceable rights""); *Bohn v. Nw. Airlines*, Inc., 435 N.W.2d 612, 615 (Minn. Ct. App. 1989) (holding that requiring a corporation to comply with its own

internal policies setting forth requirements not present under state of federal "would effectively discourage employers from voluntarily implementing . . . policies beyond those expressly mandated by law."); *Morrison v. Mineral Palace Ltd. P'ship*, 603 N.W.2d 193, 196 n.4 (S.D. 1999) ("the [internal] policy [of a company] does not set forth a standard of conduct that establishes what the law requires of a reasonable person under the circumstances"); *Titchnell v. United States*, 681 F.2d 165, 173 (3d Cir. 1982) (holding that failing to meet an internal standard should not result in liability if still surpassing the legal standard); *Cast Art Indus., LLC v. KPMG LLP*, 3 A.3d 562, 580-81 (N.J. 2010) (explaining how applying company's internal procedures with a higher standard of care than common-law standard could discourage companies from creating procedures that exceed common law duties), *rev'd on other grounds,* 36 A.3d 1049 (N.J. 2012).

The issue of attempting to hold a party to the standard set forth in its internal policies and procedures understandably most often occurs in cases asserting claims of negligence, where such standard may become the standard of care. *See Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159, 163 (8th Cir. 1981) ("Such [internal] codes do not have the force of law and do not establish negligence per se."). But the reasoning set forth by the Minnesota Supreme Court in the 19th century is timeless and its application is not limited

merely to claims of negligence—a company's internal rules and policies have no bearing on statutory or common law duties.

Here, the ***legal*** issue to be determined concerning liability is whether Fifth Third had a legal obligation to provide a strict compliance notice to Plaintiff prior to repossessing her vehicle. If so, then a ***factual*** determination must be made regarding whether Fifth Third provided actual and sufficient notice to Plaintiff to meet such an obligation.

Even if Fifth Third's policies and procedures generally addressed sending a so-called *Cobb* notice to borrowers with a history of late or insufficient loan payments, the relevant issue is whether such a notice was in fact provided to Plaintiff in this case—not the peripheral and irrelevant issue of whether Fifth Third complied with its own internal policies and procedures as they relate to Plaintiff. Accordingly, Fifth Third's internal policies and procedures are not relevant to Plaintiff's claims which are all premised on Fifth Third's alleged failure to provide a *Cobb* notice to Plaintiff prior to repossessing the car at issue. (*See* ECF No. 1-1, Compl. at ¶¶ 31, 37, and 43 explaining Plaintiff's claims of wrongful repossession, conversion, and violation of the Fair Debt Collection Practices Act are based on a failure to provide a *Cobb* notice; *see also* ECF No. 7, Rule 26(f) Report at 1, ¶ (a)(1), Plaintiff's descriptions of claims asserted in her Complaint.)

### 2.   Discovery concerning Fifth Third's internal policies and procedures is not proportional to the needs of this case.

Because the only issues that must be determined in this action are whether a purported *Cobb* notice was required, and if so, then whether such a notice was actually provided to Plaintiff, discovery of Fifth Third's internal policies and procedures are not only irrelevant to these determinations, but also are necessarily ***not*** proportional to the needs of this case.

The issues that need to be resolved in this litigation are: (1) did Fifth Third have a legal obligation to provide a strict compliance notice to Plaintiff prior to repossessing the vehicle at issue; and (2) if so, did Fifth Third provide sufficient notice to Plaintiff to meet such an obligation. As a result, a determination of Fifth Third's alleged liability does not require discovery of Fifth Third's internal policies and procedures.

Plaintiff's theory of liability for violation of Minnesota Statutes section 336.9-609 is essentially one for strict liability. There is no *mens rea* or fault requirements. Under Plaintiff's theory, Fifth Third is liable, or not, regardless of what its internal policies and procedures may provide. And violation of any Fifth Third internal policies, as a matter of law, does not *per se* give rise to liability. *Brown*, 650 F.2d at 163. Notably, Plaintiff can provide no citation to case law or statutory authority demonstrating a defendant's internal policies and procedures assist a plaintiff in establishing liability for an alleged

unlawful repossession of a car in violation of Minnesota Statutes section 336.9-609. Nor is Defendant Fifth Third aware of such authority—because internal policies and procedures are unnecessary to establish Plaintiff's claim for unlawful repossession. Therefore, based on principles of proportionality, such discovery should not be allowed because the discovery is not important to resolving Plaintiff's claim, the amount in controversy relating to this $14,419.37 loan does not justify the discovery, and the burden and expense of answering irrelevant discovery is not outweighed by the benefits of allowing it.

Nor does the discovery Plaintiff seeks aid in resolving Plaintiff's conversion claim. Fifth Third is prepared to stipulate that it acted in good faith, although intentionally, in repossessing the vehicle at issue, and in maintaining possession of the vehicle since its repossession. As set forth in Fifth Third's Pending Motion for Judgment on the Pleadings, the alleged requirement of providing a *Cobb* Notice pursuant to *Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232 (Minn. 1980) was superseded by Minnesota's Credit Agreement Statute (*i.e.*, Minn. Stat. § 513.33) enacted in 1985, and by the Supreme Court's recent decision in *Figgins v. Wilcox*, 879 N.W.2d 653 (Minn. 2016). (ECF No. 28.) Fifth Third's actions regarding the repossessed vehicle all rest on its good faith understanding of Minnesota law. To the extent Plaintiff argues Fifth Third's internal policies and procedures are discoverable to establish the intentionality of the initial repossession, and subsequent continued possession

of the vehicle, the principals of proportionality in Rule 26(b)(1) dictate that a protective order is appropriate.  Accordingly, the intentionality of Fifth Third's actions is not at issue, and requiring Fifth Third to produce its confidential, trade secret, internal policies and procedures is not supported by the issues at stake in the case, the importance of such discovery in resolving this stipulated issue, the $14,419.37 loan amount underlying Plaintiff's claims, or the likely benefit of allowing discovery of such documents and information. *See* Fed. R. Civ. P. 26(b)(1), identifying proportionality factors for the court to consider in determining the scope of discovery.

Plaintiff's discovery requests subject to his motion are an impermissible fishing expedition which does not bear upon Fifth Third's potential liability. Any burden or cost to provide such information is therefore not necessary to resolve this matter, and is a waste of party resources that could otherwise be used to resolving this matter. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ***and proportional to the needs of the case*** [.]") (emphasis added).

## CONCLUSION

For the foregoing reasons, Fifth Third respectfully requests the Court enter a protective order limiting Plaintiff's ability to obtain discovery in response to the requests identified herein, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

Dated:  July 26, 2018.                    Respectfully submitted,

**BOWMAN AND BROOKE LLP**

*/s/ Charles (C.J.) Schoenwetter*
Charles (C.J.) Schoenwetter (#025115X)
David J. Carrier (#393582)
150 South Fifth Street, Suite 3000
Minneapolis, MN  55402
Tel: (612) 339-8682
Fax: (612) 672-3200
cj.schoenwetter@bowmanandbrooke.com
david.carrier@bowmanandbrooke.com

***Attorneys for Defendant Fifth Third Bank***