# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Kelley L. Hendrickson, | Case No. 18-cv-86 (WMW/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Fifth Third Bank, and 11th Hour Recovery, Inc., | |
| Defendants. | |

Thomas J. Lyons, Jr., Consumer Justice Center, P.A., 367 Commerce Court, Vadnais Heights, MN 55127; Adam R. Strauss, Tarnish Cody, PLC, 6337 Penn Avenue South, Minneapolis, MN 55423 (for Plaintiff);

C.J. Schoenwetter & David J. Carrier, Bowman and Brooke LLP, 150 South Fifth Street, Suite 3000, Minneapolis, MN 55402 (for Defendant Fifth Third Bank); and

Michael G. Phillips, Phillips Law, PLLC, 1155 East Grain Exchange Building, 412 South Fourth Street, Minneapolis, MN 55415 (for Defendant 11th Hour Recovery, Inc.).

This matter is before the Court on Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 45) and Defendant Fifth Third Bank's Motion for Protective Order (ECF No. 31).

## I.  BACKGROUND

In August 2016, Plaintiff Kelley L. Hendrickson obtained a loan from Defendant Fifth Third Bank ("Fifth Third") for the purchase of an automobile. Compl. ¶ 15 (ECF. No. 1). The original balance on the loan was $14,419.37. *Id*. at ¶ 17. As a condition of the loan, Plaintiff granted Fifth Third a security interest in the automobile. *Id*. at ¶ 16.

1

Between June and October 2017, Plaintiff made five late payments on her loan, which Fifth Third accepted. *Id.* at ¶ 24. Plaintiff further claims that she spoke with a Fifth Third representative on several occasions, who told Plaintiff that Fifth Third would not repossess her car as long as she continued to make payments. *Id.* at ¶ 25. At no point did Fifth Third indicate to Plaintiff, either orally or in writing, that it intended to strictly enforce the terms of Plaintiff's loan agreement. *Id.* at ¶ 27.

Sometime around October 2017, Fifth Third hired Defendant 11th Hour Recovery, Inc. ("11th Hour") to repossess the car. *Id.* at ¶ 28. According to Plaintiff, 11th Hour repossessed Plaintiff's car in the middle of October, without providing any notice to her beforehand. *Id.* at ¶ 29-30. Plaintiff subsequently filed suit in Hennepin County. Plaintiff alleged that 11th Hour violated the Federal Debt Collection Practices Act, that Fifth Third unlawfully converted her car, and that both Defendants violated Minnesota Statutes section 336.9-609. *Id.* at ¶¶ 35-49. Fifth Third removed the lawsuit to federal court (ECF No. 1).

On March 13, 2018, the Court issued its pretrial scheduling order (ECF No. 9). Among other things, the pretrial scheduling order required the parties to file amended pleadings no later than May 1, 2018. On June 1, 2018, Plaintiff moved to amend the pretrial scheduling order, seeking to extend the deadline to file amended pleadings to August 1, 2018 (ECF No. 17). Plaintiff's motion was based in part on the fact that she had retained new counsel. Approximately six weeks later, in response to discovery requests that Plaintiff served on June 13, 2018, Fifth Third moved for a protective order (ECF No. 31).

The Court granted Plaintiff's motion to amend the pretrial scheduling order on July 26, 2018 (ECF No. 37) and issued an amended scheduling order the same day, extending

the deadline to file amended pleadings to August 1, 2018 (ECF No. 38). On August 1, 2018, Plaintiff filed a motion for leave to file an amended complaint (ECF No. 45). Plaintiff's amended complaint seeks to (1) turn her individual action into a putative class action and (2) add ten "John Doe Repossession Agencies" as defendants. The Court held a hearing on October 30, 2018 on both Plaintiff's motion to file an amended complaint and Fifth Third's motion for a protective order (ECF No. 98). At that hearing, the Court ordered the parties to file supplemental briefing related to Fifth Third's motion for a protective order. The parties filed their briefs on November 13, 2018 and the Court took both motions under advisement.

## II. MOTION TO AMEND

### A. Legal Standard

Once 21 days have passed after service of a responsive pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "Although leave to amend 'shall be freely given when justice so requires,' *see* Fed. R. Civ. P. 15(a), plaintiffs do not have an absolute or automatic right to amend." *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005) (citing *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)). The Court may deny a party's request for leave to amend only "if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir.

2008)). "[A] motion to amend should be denied on the merits 'only if it asserts clearly frivolous claims or defenses.'" *Becker v. Univ. of Nebraska at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999) (quoting *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994)).

Defendants argue that Plaintiff's motion should be denied because they will suffer substantial prejudice and because Plaintiff's proposed amendments are futile. Alternatively, Defendants argue that, if the motion for leave to amend is granted, the Court should consolidate this matter with a class action complaint filed in *Sampson et al. v. Fifth Third Bank*, No. 18-cv-1622 (D. Minn.) on June 11, 2018.

**B. Prejudice**

At the outset, Defendants cite to two cases in support of their argument that the additional cost and burden of litigating class allegations constitutes reason to deny Plaintiff's motion for leave to amend. *See Rogers v. Medicredit, Inc.*, No. 4:12-cv-2277, 2013 WL 4496278, *3 (E.D. Mo. Aug. 21, 2013); *Wonasue v. Univ. Md. Alumni Ass'n*, No. PWG-11-3657, 2013 WL 3009316 *5 (D. Md. June 14, 2013).[1] Those cases, however, relate to motions that were brought outside the deadlines for filing amended pleadings as set forth in the respective scheduling orders. *See Rogers*, 2013 WL 4496278 at *1; *Wonasue*, 2013 WL 3009316 at *3. When seeking to amend a complaint outside of the

---

[1] Defendants also reference *Niesse v. Shalala*, 17 F.3d 264, 266 (8th Cir. 1994) a case cited in *Rogers*. It is not apparent from that case whether the court was reviewing a motion to amend under Rule 15 or 16. *See Niesse*, 27 F.3d at 266. In that case, which was before the district court following a social security administrative proceeding, Plaintiff moved to amend her complaint only after the administrative decision was issued, discovery was completed, and the matter was nearly ready for the court's consideration. *Id*. Here, however, Plaintiff moved to amend within the deadlines provided by the scheduling order and while substantial discovery remained outstanding.

4

deadlines provided by the scheduling order, the plaintiff must show "good cause." Fed. R. Civ. P. 16(b)(4). Here, however, because Plaintiff moved for leave to amend within the deadlines provided by the scheduling order, she must only satisfy the standard set forth by Federal Rule of Civil Procedure 15, which is far "more liberal" than Rule 16's good cause standard. *Rogers*, 2013 WL 4496278 at *1 (citing *Sherman,* 532 F.3d at 716). Motions for leave to amend under Rule 15 may only be denied in "limited circumstances." *Roberson v. Hayti Police Dept.,* 241 F.3d 992, 995 (8th Cir. 2001). The Rule 15 standard is the standard that the Court must apply when evaluating Plaintiff's motion for leave to amend.

Defendants argue that if Plaintiff's motion for leave to amend is granted, "every document," "every deposition," "every hour" spent on "class discovery", and every "class-related motion[]" in this case will be duplicative of Defendants' efforts in *Sampson*. In making this argument, Defendants presume that Plaintiff's proposed class action complaint is identical to the class-action complaint filed in *Sampson,* a point that Plaintiff contests. But even assuming for purposes of this motion that Defendants' presumption is true, Defendants still do not demonstrate that they will be suffer undue prejudice if the Court grants Plaintiff's motion for leave to amend. Matters that involve common questions of law or fact can be consolidated, joined for trial, or coordinated in any other way "to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(1)-(3). Thus, if this case and *Sampson* overlap significantly, as Defendants claim they do, Defendants may move for the two matters to be consolidated or coordinated under Rule 42. Such a motion would allow Defendants to coordinate discovery and motion practice and would mitigate any prejudice

that Defendants would suffer because of the similarities between Plaintiff's proposed amended complaint and the *Sampson* action.

Defendants also argue that they will be prejudiced by the addition of ten "John Doe" defendants to this litigation. They contend that the addition of these parties will likely cause a delay of one year or more to the current trial date of August 1, 2019. In a motion to amend brought under Rule 15, undue delay alone "is insufficient to deny leave to amend a complaint." *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.,* 326 F.R.D. 513, 527 (D. Minn. 2018). Leave to amend may only be denied if the delay results in unfair prejudice to the non-moving party. *Id.*; *see also Rogers*, 2013 WL 4496278 at *1.

Here, the only articulable prejudice that Defendants identify that would result from the delay is the potential rescheduling of their motions-to-dismiss, scheduled to be heard on December 7, 2018.[2] But that prejudice is Defendants' own doing. Defendants chose to file their motions-to-dismiss on October 19 and 24, two months after Plaintiff filed her motion for leave to amend her complaint and three months after the Court extended the deadline for Plaintiff to amend her pleadings. Defendants cannot point to pending dispositive motions as evidence of prejudice when they chose file those motions after Plaintiff filed a motion that Defendants knew might be ruled on first and might affect the timing of their dispositive motions.

---

[2] Defendants also argue that a second round of dispositive motions might be necessary to address arguments by the ten John Doe defendants. Defendants do not articulate how they would participate in those motions, and thus the only prejudice they would suffer is delay, which is insufficient to deny Plaintiff's motion. *IBEW Local 98 Pension Fund*, 326 F.R.D. at 527.

This is not the first time that Defendants have made this argument. When Defendants opposed Plaintiff's motion to amend the pre-trial scheduling order, they also claimed that they would suffer prejudice because the new scheduling order would require Defendants to reschedule previously noticed dispositive motions. This Court rejected that argument, finding good cause to amend the scheduling order and noting that Defendants could not point to pending motions as evidence of prejudice when they knowingly chose to file those motions after Plaintiff moved to amend the scheduling order. Despite that admonition, Defendants again make the same argument. For the same reasons as before, the Court rejects it.[3]

## C. Futility

Defendants also contend that the Court should deny Plaintiff's motion for leave to amend as futile. A motion for leave to amend pleadings is futile when the amended pleadings would not be able to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010). Defendants, however, do not argue that Plaintiff's proposed amendments could not withstand a motion brought under Rule 12(b)(6). Instead, they argue Plaintiff's motion is futile because her proposed class could not be certified under Federal Rule of Civil Procedure 23. Defendants contend that Plaintiff is not an adequate class representative because she is employed by

---

[3] Plaintiff believes that her proposed Amended Complaint maintains the same allegations and counts as her current Complaint. If Defendants agree, they certainly may propose to the District Judge that their motion to dismiss go forward as scheduled, as there would likely be no difference on the legal merits of the two complaints. To be clear, however, the final say in that decision would be left to the District Judge.

her counsel. *See* Fed. R. Civ. P. 23(a)(4) (requiring the representative party in class action be able to "fairly and adequately protect the interests of the class").

The Court does not find Defendants' argument to be persuasive for three reasons. First, it is typically appropriate to allow a plaintiff to amend a complaint to add class allegations when a "defendant's opposition to the amendment involves not-yet-certified classes." *Presser v. Key Food Stores Co-Op.*, 218 F.R.D. 53, 57 (N.D.N.Y. 2003). This is because arguments against certification are better "addressed in the context of motions to certify the proposed classes." *Id*. (citation omitted) At the class certification proceeding, Defendants can renew any arguments they have regarding Plaintiff's adequacy as a class representative and the parties meaningfully can test those arguments through a complete briefing of the relevant issues. In addition, it is more efficient for the Court to address Defendant's argument following class discovery because the Court will then have a record on which it can evaluate both Plaintiff's adequacy as a class representative as well as the other class certification factors required for a proper Rule 23 analysis, rather than evaluate each factor piecemeal.

Second, because Defendants may well move for consolidation of this matter with *Sampson*, it would also be more appropriate for arguments regarding class certification to be heard after the consolidation motion is decided. Typically, when two classes are consolidated, the parties move for appointment of a lead plaintiff and lead class counsel for the consolidated class. *See generally* Fed. R. Civ. P. 23(a), (g)(3). If *Sampson* and this case are consolidated, it is possible, depending on the outcome of the motion for appointment of lead plaintiff and lead counsel, that Plaintiff will no longer be required to

represent the interests of the class. If that is the case, then Defendants' concerns regarding Plaintiff's adequacy as a class representative would be rendered moot.

Finally, were this Court to deny Plaintiff's motion on the grounds that she cannot serve as an adequate class representative, the Court would be rendering a tacit decision on the merits of Plaintiff's future motion to certify her class. Class-certification motions are dispositive motions that must be heard and decided by the District Judge. D. Minn. L.R. 7.1(c)(6)(C). Under these circumstances, it is more appropriate for this Court to "permit the amendment and allow the merits" of Defendants' claims regarding Plaintiff's adequacy as a class representative "to be tested" at the class certification hearing before the District Judge. *See Arcaro v. City of Anoka*, No. 13-cv-2772, 2014 WL 12605451 *3, (D. Minn. July 16, 2014) (adopting similar logic when denying a motion for leave to amend on the grounds that the proposed complaint would not survive a motion to dismiss under Rule 12(b)(6)).

In reaching this decision, this Court takes no position regarding Defendants' claim that Plaintiff is an inadequate class representative. The Court merely concludes that at this stage of litigation, it would be more efficient for the amendment to go forward, for the parties to determine what motion practice is required to resolve the issue of consolidation between this matter and *Sampson*, and for Defendants' argument regarding Plaintiff's adequacy as a class representative to be tested at the class certification hearing with the other Rule 23(a) factors. Given the above circumstances, delay of the determination of whether Plaintiff is an adequate class representative does not present the type of

"compelling reasons" that justify denial of Plaintiff's motion for leave to amend. *See Reuter*, 711 F.3d at 922 (citation omitted).

### D. Consolidation

Finally, Defendants ask that if the Court grants Plaintiff's motion for leave to amend, the Court consolidate this matter with *Sampson* under the principles of the first-to-file rule and for purposes of judicial economy. The first-to-file rule is used typically "for purposes of choosing among possible venues when parallel litigation has been instituted in different courts." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). It is most often used to conserve judicial resources and avoid conflicting rulings. *Id*. It gives priority to the party who first establishes jurisdiction. *Id*.

The first-to-file rule does not apply here because both this case and *Sampson* have been filed in the same district and are assigned to the same judge. *See Artic Cat v. Polaris Industries, Inc.*, Civil Nos. 13-3579 & 13-3595, 2014 WL 5325361 *15 (D. Minn. Oct. 20, 2014) (declining to apply rule in similar circumstances). The reasons that the first-to-file rule does not apply here are relatively straightforward; the same judge is not likely to issue conflicting rulings in the two cases. *Woodards v. Chipotle Mexican Grill, Inc.*, No. 14-cv-4181, 2015 WL 3447438 *10, (D. Minn. May 28, 2015). That judge will also have a wide variety of procedural tools at his or her disposal to consolidate or coordinate the two actions as appropriate. *See Artic Cat*, 2014 WL 5325361 at *15.

Defendants contend that the "essential distinguishing factor" between this matter and *Artic Cat* is the fact that both this matter and *Sampson* are class actions. But other courts have declined to apply the first-to-file rule to consolidate class actions so long as

those actions were filed in the same district and assigned to the same judge. *See Woodards*, No. 14-cv-4181, 2015 WL 3447438 *7-*10, (D. Minn. May 28, 2015). The Court has been presented with no compelling reason to treat this matter any differently.

Likewise, judicial economy is not best served by consolidating this matter with *Sampson* through this order. As the Court has previously noted, following a Rule 42 motion, the Court may conclude that it is appropriate for this case and *Sampson* to be consolidated or otherwise coordinated. To do so at this point, however, would not be appropriate when the parties in *Sampson* have not been given the opportunity to be heard on this issue. Given the Court's ruling on Plaintiff's motion for leave to amend, the Court urges the parties in both this case and *Sampson* to meet and confer and see if a resolution can be reached regarding the consolidation or coordination of these two matters. Of course, if no agreement can be reached, then any party is free to bring a motion arguing for the coordination and consolidation of the two matters.

### III. MOTION FOR PROTECTIVE ORDER

#### A. Legal Standard

Rule 26 permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). To determine whether the discovery requested is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Even when the

discovery is relevant, it "is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)). Under Rule 26(c)(1), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" due to a discovery request. Fed. R. Civ. P. 26(c)(1). "Good cause" can be satisfied by a showing of irrelevancy. *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994).

Fifth Third seeks a protective order regarding the following interrogatories, requests for admission, and requests for production that Plaintiff served on June 13, 2018:

- **Interrogatory No. 10:** Identify and explain the BANK's[4] policy and procedure for sending a written strict compliance notice to Minnesota customers when the BANK has accepted late or partial payments from that Minnesota customer and then is warning those customers that no such future late or partial payments will be tolerated.

- **Interrogatory No. 11:** Identify and explain the BANK's policy and procedure for sending a written notice to Minnesota customers when the BANK has accepted late or partial payments from that Minnesota customer and then is warning those customers that failure to make the arrearage payments by a date specific may result in repossession of the collateral.

- **Interrogatory No. 13:** Have any guidelines or procedures identified in your preceding answers to interrogatories been modified in any way since the occurrence of the facts and circumstances as alleged in the Complaint? If so, describe in detail all such modifications, provide the dates upon which such modifications were made, identify the individuals authorizing such modification, and provide the reasons therefore.

---

[4] All references to "BANK" refer to Fifth Third.

- **Interrogatory No. 14:** Identify and explain the BANK's policies and procedures, if any, for phone conversation [(sic)] with borrowers who are delinquent on vehicle loans

- **Interrogatory No. 15:** Identify and explain the BANK's policies and procedures, if any, for entering into credit accommodation agreements, forbearance agreements, or other arrangements to delay repossession in exchange for promises of future loan payments.

- **Interrogatory No. 18:** From January 11, 2017 through the present date, identify how many borrowers had their vehicles repossessed in Minnesota.

- **Interrogatory No. 19:** From January 11, 2014 through the present date, identify how many borrowers had their vehicles repossessed in Minnesota.

- **Interrogatory No. 20:** With regard to the repossession [(sic)] identified in the previous Interrogatory, identify whether or not Defendant BANK sent the borrower a Cobb Notice prior to the repossession.

- **Interrogatory No. 21:** Identify and describe all complaints, lawsuits, regulatory investigations or communications to Defendant BANK concerning alleged "wrongful repossession" from January 1, 2014 to the present.

- **Interrogatory No. 22:** Identify all BANK memos, emails, policies or other writings or communications that refer to Minnesota law, Minnesota regulations, strict compliance notices, or Cobb Notices.

- **Request for Admission No. 11:** Admit that within the past year, Defendant BANK has repossessed over 40 vehicles from Minnesota customers.

- **Request for Admission No. 12:** Admit that between January 1, 2014 through January 11, 2018, Defendant BANK did not have a policy or procedure for sending Cobb Notices.

- **Request for Admission No. 13:** Admit that between January 1, 2014 through January 11, 2018, Defendant BANK did not have a policy or procedure for notifying borrowers in writing that strict compliance with the terms their loan or contract is required.

- **Request for Production No. 9:** From January 2016 through the present date, all procedural and policy manuals in existence and in the possession or control of Defendant BANK which relate to the following:

    a. Collection/Repossession of delinquent accounts;

    b. Creation and documentation of accommodation or forbearance on repossession arrangements or agreements with borrowers;

    c. Mailing of notices related to strict compliance with original contract terms, account arrearages, delinquent payment history, repossession remedies, and/or Cobb notices as described herein;

    d. Handling payments on account after the account has been designated or referred to collection/repossession;

    e. Assigning accounts to outside collection contractors for collection/repossession;

    f. Issuing notices of sales of the collateral subject to the security agreements; and

    g. Any other procedures which relate to the subject matter.

- **Request for Production No. 12:** Any and all policies referencing Minnesota law, Cobb Notices, and/or notices concerning strict compliance with contract or loan terms.

Fifth Third argues that a protective order should issue for two reasons. First, it contends that any request related to Plaintiff's putative class actions claims is irrelevant and disproportional to the needs of this lawsuit because Plaintiff has only filed an individual claim. Second, Fifth Third argues that discovery related to its internal policies and procedures is also not relevant and disproportional to the needs of this lawsuit because Fifth Third's internal policies and procedures are not relevant to any standard of conduct at issue in this case.

    At the October 30 motion hearing, this Court ordered the parties to submit supplemental briefs addressing what discovery requests related to Plaintiff's individual claims and what requests related to Plaintiff's putative class action claims. In response,

Plaintiff identified the following discovery requests as related to her individual claims: interrogatories 10 through 17, 21, and 22, requests for admission 11 through 13, and requests for production 9 through 13.[5] Fifth Third argued that Plaintiff was only entitled to her "loan file" regarding her individual claims.

The Court concludes that of the discovery requests that are the subject of Fifth Third's motion for protective order, the following relate to Plaintiff's putative class action claims: interrogatories 18, 19, and 20, and request for admission 11. Each of those requests seeks information related to the number of other people whose vehicle Fifth Third repossessed or information regarding the type of notification that each of those people received before their vehicles were repossessed. Information responsive to these requests would not be relevant to the merits of Plaintiff's own claim, but would be relevant to issues such numerosity, typicality, and commonality, which Plaintiff would be required to address in a motion for class certification. *See* Fed. R. Civ. P. 23(a).

### B. Class Action Discovery

Because the Court has granted Plaintiff's motion for leave to amend her complaint, the Court also concludes that Plaintiff's discovery requests that relate to her putative class action claims are relevant and proportional to the scope of her lawsuit. The Court will therefore deny Fifth Third's motion for a protective order regarding interrogatories 18, 19, and 20, and request for admission 11. The Court will, however, stay discovery on these requests. This Court may stay proceedings when necessary "to control the disposition of

---

[5] Because Fifth Third does not seek a protective order regarding interrogatories 12, 16, and 17 or requests for production 10, 11, and 13, the Court does not address whether a protective order is appropriate for those requests.

15

the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013).

Here, a stay is appropriate because of the pending motions to dismiss before the District Judge and the possibility that Defendants will move to consolidate this matter with *Sampson*. In *Sampson* the parties have not yet filed their Rule 26(f) report. *See* Fed. R. Civ. P. 26(d)(1) (permitting discovery to go forward only after Rule 26(f) conference). The parties in *Sampson* will also not have their pre-trial conference with this Court until after the motions to dismiss are decided. (ECF No. 18 in *Sampson*, No. 18-cv-1622). A stay will ensure that class-related discovery in this matter does not outpace the class discovery efforts that will be required in *Sampson*. A stay also ensures that Defendants will not be prejudiced by duplicative class discovery.

In addition, a stay on class-related discovery is not likely to delay this matter significantly. For reasons discussed below, Plaintiff will be able to continue pursuing discovery that is relevant to the merits of her individual claim. Her individual discovery is also likely to be relevant to the merits of her class claims. The Court will therefore order that discovery related to Plaintiff's interrogatories 18, 19, and 20, and request for admission 11 be stayed until the District Judge has decided Defendants' motions to dismiss.

**C. Individual Discovery**

The remaining discovery requests that are at issue here, interrogatories 10, 11, and 13 through 15, requests for admission 12 and 13, and requests for production 9 and 12, relate to Fifth Third's policies and procedures for communicating with customers regarding repossession, lawsuits related to the repossession of vehicles, and information related to

Minnesota law governing the repossession of vehicles. Fifth Third contends that a protective order is appropriate here because its internal policies and procedures are not relevant to any standard of conduct at issue in this case.

It is true that a company's internal policies and procedures do not create specific enforceable rights and thus cannot be relied on to create a standard of care. *See, e.g. Bohn v. Nw. Airlines, Inc.*, 435 N.W.2d 612, 615 (Minn. App. 1989). But Fifth Third's argument relates more to the admissibility of the information that Plaintiff seeks at trial, rather than the discoverability of that evidence. Rule 26(b) is "widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). The lone fact that the information sought through discovery may not be admissible as evidence at trial is no grounds for objection to discovery. *Id.*

Here, Fifth Third's argument presumes that Plaintiff's "theory of liability . . . is essentially one for strict liability." Fifth Third indicates that the ultimate issue that will determine liability in this litigation is whether Minnesota law required Fifth Third to send Plaintiff a *Cobb* notice before repossessing her vehicle. Resolution of this issue may turn purely on the District Judge's legal interpretation of various Minnesota statutes that govern a secured party's right to take possession of property after default. The discovery that Plaintiff seeks would not be relevant to that determination.

But Fifth Third also contends that, if Minnesota law requires that a *Cobb* notice be provided, the Court will also be required to determine whether Fifth Third provided

17

Plaintiff actual and sufficient notice before repossessing her vehicle. That issue presents, as Fifth Third concedes, a factual question. Undoubtedly, information related to Fifth Third's internal policies and procedures, including lawsuits related to those policies and procedures would be relevant and reasonably likely to lead the discovery admissible evidence related to the factual question of what constitutes a sufficient *Cobb* notice. *See Edeh v. Equifax Info. Services, LLC*, No. 11-cv-2671, 2013 WL 1799006 *2, (D. Minn. Apr. 29, 2013) (permitting discovery into prior lawsuits). In any event, it is not certain that the information that Plaintiff seeks would even be inadmissible at trial. The "admission of industry . . . and of private codes adopted by an employer" is favored, even when those codes do not have the force of law. *Brown v. Cedar Rapids & Iowa City Ry. Co.*, 650 F.2d 159, 163 (8th Cir. 1981). Accordingly, the Court declines to grant Fifth Third's motion for a protective order for interrogatories 10, 11, and 13 through 15, requests for admission 12 and 13, and requests for production 9 and 12.[6] It may well be that Fifth Third will be permitted to file a motion in limine at the appropriate time governing the use of that discovery at trial. But that decision is for another day.

## IV. CONCLUSION

Therefore, based upon the record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Leave to File Amended Complaint (ECF No. 45) is **GRANTED**. Plaintiff shall file her Amended Complaint within seven days of this Order.

---

[6] The Court also notes that Fifth Third spent substantial time arguing in its supplemental brief that it is entitled to substantial discovery if the Court grants Plaintiff's motion for leave to amend. Because Fifth Third has not filed a motion to compel here, the Court declines to address this argument.

2. Defendant Fifth Third Bank's Motion for Protective Order (ECF No. 31) is **DENIED**.

3. All discovery related to Interrogatories 18, 19, and 20, and Request for Admission 11 of Plaintiff's First Set of Interrogatories, Requests for Admissions with Interrogatory, Requests For Production of Documents, and Requests for Productions of Statements to Defendant Fifth Third Bank is **STAYED** until the Motions for Judgment on the Pleadings (ECF Nos. 87 and 92) are decided in this matter.

4. All prior consistent orders remain in full force and effect.

5. Failure to comply with any provision of this Order or any other prior consistent order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Date: November 27, 2018

　　　　　　　　　　　*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Hendrickson v. Fifth Third Bank et al.*
Case No. 18-cv-86 (WMW/TNL)